**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MICHAEL ROBERT PAPPAS,<br><br>      Plaintiff,<br><br>  v.<br><br>U.S. BANK HOME MORTGAGE, N.A.;<br>CENLAR CENTRAL LOAN<br>ADMINISTRATION; EXPERIAN<br>INFORMATION SOLUTIONS, INC; and<br>EQUIFAX INFORMATION SERVICES, LLC,<br><br>     Defendants. | Case No. 1:15-cv-008115<br><br>Hon. Amy J. St. Eve |

**DEFENDANT EXPERIAN INFORMATION SOLUTIONS, INC.'S
MOTION FOR DETERMINATION OF BAD FAITH AND SANCTIONS**

Where the Plaintiff prevails in a lawsuit brought under the Fair Credit Reporting Act ("FCRA"), he or she is entitled to recover attorneys fees incurred related to the action. *See* 15 U.S.C. § 1681o(a)(2). This provision is, of course, ripe for abuse, as counsel for the plaintiff can be enticed to bring frivolous litigation while demanding outrageous settlement amounts based on nothing more than the prospect of attorneys fees incurred. This case is just such a case. Here, Plaintiff's Complaint rested on allegations that Experian's credit reporting cost Plaintiff a new vacation home, but discovery revealed the truth: Plaintiff's own choice to file bankruptcy, surrender the properties, and the subsequent foreclosure process was the culprit, not Experian. Plaintiff and his counsel knew that Experian's reporting did not cause Plaintiff any damage well before they filed this case. They certainly knew so before they repeated these misrepresentations in amended pleadings after discovery closed. The FCRA and its fee-shifting provision were abused by Plaintiff and his counsel, who demanded unsubstantiated and outrageous settlement

amounts, forcing Experian to expend substantial sums in defending litigation that was, at all times, frivolous and propped up by materially false allegations.[1]

Congress anticipated that the FCRA might be abused, and included a remedy for defendants, like Experian, who are forced to defend against frivolous and harassing FCRA litigation. In particular, the FRCA provides for reverse fee-shifting "upon a finding by the court that an unsuccessful pleading, motion, or other paper filed in connection with an action under this section was filed in bad faith or for purposes of harassment." 15 U.S.C. §§ 1681n(c); 1681o(b). In addition, separate from the FCRA, Congress has provided for sanctions against counsel where litigation is multiplied "unreasonably and vexatiously." *See* 28 U.S.C. § 1927. Here, fee-shifting should be awarded against Plaintiff and sanctions should be awarded against his counsel for multiple reasons. *First*, the Original Complaint was baseless from the start and included allegations which were demonstrably (and knowingly) false. *Second*, the Amended Complaint, filed *after* discovery closed and *after* Plaintiff's deposition testimony left no doubt that this case was frivolous and baseless, repeated these lies and could not have been filed in good faith. And *finally*, Plaintiff's affirmative Motion for Summary Judgment—a motion that did not even bother to mention *two essential elements* of his claim—was filed in bad faith and solely to harass.

This litigation was filed in order to use the federal courts to extort a ransom settlement without regard to the merits of the case. To bolster his case, Plaintiff and his counsel included fanciful allegations of damages that they knew were false well before this case was filed. This

---

[1] Out of respect for the confidentiality of settlement conferences, Experian has not attached Plaintiff's settlement demand letter prepared for the conference held in front of Judge Mason. Should the Court wish to review the letter in deciding this motion, Experian offers to file it under seal.

Court should find that Plaintiff's case was filed and pursued in bad faith. Accordingly this Court should find that Experian is entitled to an award of attorneys' fees.

## I.    BACKGROUND

### A.    Plaintiff's Abusive Chapter 13 Bankruptcy.

Plaintiff's abuse of the federal courts began with the filing of his Chapter 13 bankruptcy. A bankruptcy discharge is intended for the "honest, but unfortunate debtor." *See Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 367 (2007) (quotation omitted). That is not Plaintiff. For one, Plaintiff is not "unfortunate," other than the fact that, like most of us, he lived in the Unites States at a time when the real estate market crashed.[2] Plaintiff is a successful executive in the commercial insurance industry, netting a six-figure salary. Over time he accumulated real estate holdings including a number of rental properties and vacation homes. After the housing-market crash, he decided that he wanted to dump some, but not all, of those properties because some were underwater (their value far less than the debts against them). With the help of attorneys from Sulaiman Law Group (his attorneys here), Plaintiff figured out a way to gamble but never lose, dumping his underperforming properties, while keeping his other properties by way of a Chapter 13 bankruptcy. The only downside was a temporarily diminished ability to secure credit; something he was of course well aware of at the time he filed.

Likewise, Plaintiff was not honest. His bankruptcy filing was rife with self-serving misrepresentations, most notably his statement under oath that every single one of his underwater property mortgages had $0 in unsecured debt (something only possible if the property were not actually underwater). Though the Bankruptcy Court's instructions plainly explain that he is to

---

[2] Much of this background was recited in Experian's Rule 56.1 Statement of Undisputed Facts, submitted in support of its Motion for Summary Judgment. *See* Doc. 103 at ¶¶ 5-26.

populate Schedule D with the difference between the amount owed on the loan and the value of the property, thus affording the creditor, the case trustee, and the bankruptcy court with a fair and honest picture of whether it is worth filing a proof of claim, Plaintiff falsely and repeatedly claimed to have $0 in unsecured debt for each property. He also then falsely identified Experian as being one of his creditors, no doubt with his eye toward a planned future lawsuit against Experian of the type his counsel specializes in, where he could claim that he had provided Experian notice of the ins and outs of his bankruptcy filings (which is exactly what he did in his complaints, *see* Compl. at ¶¶ 20, 24, 34; Am. Compl. at ¶¶ 18, 22, 32.) Finally, during the multi-year process where Plaintiff's various underwater real estate holdings were foreclosed, Plaintiff continued renting the homes, pocketing the tens of thousands of dollars of income, and not reporting it to the Trustee notwithstanding the fact that he had ceased making his mortgage payments. This is in also an abuse of the bankruptcy process. *See In re Lockbaum*, No. 09 B 05704, 2010 WL 3522354, at *1 (Bankr. N.D. Ill. Sept. 2, 2010) ("if a debtor owns real property on the day the case is filed and he receives post-petition rent from tenants living in the property, the rent is also considered to be property of the estate.").

Plaintiff's plan worked to perfection. He dumped his losing bets without having to pay the losses, kept the winners and collected the gains, padding his wallet along the way with years of rental income without any offsetting mortgage payments. The only consequence was that it was temporarily more difficult to secure credit – a consequence Plaintiff admittedly knew beforehand. But that slight consequence did not slow Plaintiff, as he was still able to purchase a second vacation home (albeit one with a smaller boathouse than Plaintiff wanted) just months after completing his bankruptcy by using cash from his brokerage account.

**B.      The Original Complaint.**

Plaintiff then turned his sights to Experian, filing this case claiming that "Experian prepared Plaintiff's credit reports containing inaccurate information," and that "Experian acted reprehensively and carelessly by reporting an innocent consumer as continually delinquent, in default, and owing a high past due balance." (Cmplt. ¶¶ 122, 139)  This, Plaintiff alleged, caused him extensive damage.  In particular, Plaintiff alleged that he "lost a deal to purchase a home . . . as he was unable to obtain a mortgage ***based on his credit score***."  (Compl. ¶ 40 (emphasis added).)  He also alleged that he suffered "the loss of credit, the loss of ability to purchase and benefit from a credit line," and other costs, along with "the mental and emotional pain and suffering, anguish, humiliation, and embarrassment of ***constant credit denials***."  (*Id.* at ¶¶ 60, 140 (emphasis added).)

**C.      The Evidence Produced in Discovery.**

Discovery revealed that Plaintiff's allegations of damage and inaccuracies in his credit reports, as alleged in his Complaint, were false.  When asked in written discovery to identify any credit applications or denials, Plaintiff pointed only to his inability to obtain a vacation home, stating "Pappas was denied a mortgage loan based on the inaccurate information in his credit file." (*See* Pl.'s Interrogatory Response, at Resp. 7 (attached as Exhibit A).).  Plaintiff was unable to provide proof of even a single credit denial that was based on his credit score, or Experian's reporting.  Similarly, though Plaintiff's Complaint alleged that Experian's reporting caused him "mental and emotional pain and suffering, anguish, humiliation, and embarrassment" all supposedly caused by the nonexistent "constant credit denials," in deposition Plaintiff immediately put the lie to that allegation, testifying that he was not pursuing any claim for emotional damage and, of course, failing to point to any such denials, let alone "constant" denials.  (*See* Ex. B at 125: 18-127:8.)

5

Documents produced in discovery demonstrated that Plaintiff's claims that Experian, or Plaintiff's credit score, had anything to do with Plaintiff's inability to secure a mortgage were false. In truth, Plaintiff's failure to secure a mortgage was due to the fact that the potential lenders would not lend to him while his various foreclosures were ongoing or, to quote the documents, the lenders were "stuck on the foreclosures not being completed." (*See* Ex. C at 2-4 (collected emails).) Strikingly, Plaintiff had provided these documents to his attorneys two months *before* he filed his Complaint. (*See id.* at 1 (forwarding emails to Marwan Daher at Sulaiman Law Group).) At deposition, Plaintiff admitted that his inability to obtain mortgage financing was based entirely on the pending foreclosures, and had nothing to do with Experian. (*See* Ex. B at 39:21-40:4,60:20-62:9.) Plaintiff even specifically admitted that he had never been told that his credit score had anything to do with his inability to get a mortgage. (*See id*. at 95:10-21.)

Discovery further revealed that Plaintiff's allegations that Experian issued inaccurate credit reports about him post-dispute were false. The only post-dispute inaccuracy Plaintiff was able to point to was information included in the Account History Block of his consumer disclosure. (*See* Compl. at ¶ 56; Ex. B at 124:7-125:12.) But during discovery and prior to giving a deposition, in the hopes the case might be dismissed, Experian provided a Declaration unambiguously informing Plaintiff that the Account History Block was not provided to any third parties. (*See* April 6, 2016 Declaration of Jason Scott (attached as Exhibit D).) To quote Experian's witness, the Account History "information was displayed only to the consumer on the consumer disclosure," (Ex. D at ¶¶ 15, 9) and "was not provided to third parties who requested Plaintiff's credit report for purposes of obtaining credit." (*Id*. at ¶¶ 10, 16.) Experian then confirmed these facts at deposition. *See* Ex. E at 86:9-87:8 (Deposition of Jason Scott).)

6

**D.        Plaintiff's Motion to Amend the Complaint.**

Discovery closed on May 23, 2016.  (*See* Doc. 79.)  One month later, on June 24, 2016, Plaintiff filed a Motion for Leave to Amend the Complaint.  (*See* Doc. 84.)  Plaintiff's stated reason for the amendment was so that he could prepare a pleading that would "conform with the evidence."  (*Id.* at ¶ 13.)  Plaintiff's motion was granted over Experian's objection, and on June 30, 2016, Plaintiff filed his First Amended Complaint ("FAC").  (*See* Doc. 88.)

Despite Plaintiff's representation that he intended the new Complaint to "conform with the evidence," the FAC continued to be based on falsehoods.  The FAC specifically alleged that "Plaintiff lost a deal to purchase a home . . . as he was unable to obtain a mortgage loan *based on his credit score*."  (*Id.* ¶ 38.)  This was false and directly at odds with the evidence and Plaintiff's testimony.  The FAC also repeated the demonstrably false allegation that "as a direct result of the conduct" of Experian, Plaintiff suffered from "the loss of credit, the loss of ability to purchase and benefit from a credit line…"  (*Id.* ¶ 58.)  Likewise, Plaintiff's FAC—filed *after* discovery had revealed it to be false, and contradicted by Plaintiff's own testimony—continued to allege that Experian's reporting had had caused him "mental and emotional pain and suffering, anguish, humiliation, and embarrassment of *constant credit denials*."  (*Id.* at ¶¶ 38, 58.)

Plaintiff similarly did not alter or withdraw the allegations regarding Experian issuing inaccurate credit reports, despite now knowing that Experian did not issue any inaccurate credit reports.  Plaintiff alleged that Experian's "inaccurate reporting…creates a false impression" hurting Plaintiff's "ability to obtain financing."  (*Id.* ¶ 59.)  Plaintiff's FAC acknowledged that the alleged inaccuracy was "in the account history," (*Id.* ¶ 64), but despite knowing Account History Block information is not provided to third parties, Plaintiff continued to allege in the face of undisputed evidence to the contrary that "Experian prepared Plaintiff's credit reports containing inaccurate information" and that this "would have a significant adverse affect on

7

Plaintiff's credit worthiness." (*Id.* ¶¶ 64, 76.) Plaintiff continued to allege "Experian acted reprehensively and carelessly by reporting an innocent consumer as continually delinquent, in default, and owing a high past due balance," despite knowing that Experian did not "report" anything inaccurate about Plaintiff at all. (*Id.* ¶ 81.)

E. **Plaintiff's Motion for Summary Judgment.**

On October 3, 2016, Plaintiff filed his Motion for Summary Judgment. (Doc. 105, 106.) Plaintiff asked the Court to grant him summary judgment on all his claims, including *both* negligence and willfulness claims. Remarkably, however, Plaintiff's Motion for Summary Judgment ignored *two prima facie* elements for which he bore the burden of proof; the existence of an inaccurate credit report issued to a third party, and damage causation. *See, e.g.*, *Sarver v. Experian Info. Sols., Inc.*, 299 F. Supp. 2d 875, 876 (N.D. Ill.), *aff'd sub nom. Sarver v. Experian Info. Sols., 390 F.3d 969* (7th Cir. 2004) (explaining that a Plaintiff suing under §§ 1681e(b) or 1681i must prove the existence of an inaccurate credit report, and actual damages caused by the inaccuracy, among other elements). In other words, Plaintiff's affirmative motion was *silent* as to two essential elements, without which he *could not prevail* as a matter of law. Thus, Plaintiff's Motion was doomed to fail—Plaintiff did not even attempt to meet his burden. Plaintiff even repeated the obvious lie that he was denied mortgage financing based on his credit score. (*See* Doc. 107 at ¶ 25.) Faced with this vexatious and unreasonable multiplication of the proceedings, Experian had no choice but to file a response. (Doc. 110.)

F. **The Court's Order on Summary Judgment.**

After more than a year of expensive litigation, this Court granted Experian's Motion for Summary Judgment, dismissing Plaintiff's case in its entirety. (Doc. 124.) The Court held that Plaintiff "failed to present evidence creating a genuine dispute of material fact for trial that he suffered actual damages," pointing out what Plaintiff and his counsel knew long before the filing

of the FAC—that "Plaintiff's claim that the inaccurate information on his consumer credit report caused him actual damages is belied by his own deposition testimony." (*Id.* at 7.) The Court also found that "there is no evidence in the record that Experian provided Plaintiff's entire account history to a third party in the first instance." Finally, the Court found no evidence supporting a claim for a willful violation of the FCRA.[3]

## II. LEGAL STANDARD

The FCRA provides that:

> . . . on a finding by the court that an unsuccessful pleading, motion, or other paper filed in connection with an action under this section was filed in bad faith or for purposes of harassment, the court shall award to the prevailing party attorney's fees reasonable in relation to the work expended in responding to the pleading, motion, or other paper.

15 U.S.C. §§ 1681n(c); 1681o(b). Courts in this district have held that "bad faith" in the context of this statute "requires a showing either that the party subjectively acted in bad faith-knowing that he had no viable claim-or that he filed an action or paper that was frivolous, unreasonable, or without foundation." *Ryan v. Trans Union Corp.*, 2001 WL 185182, *5 (N.D. Ill. Feb. 26, 2001). Thus, when a plaintiff "knew of the falsity and baselessness of allegations in the complaint when it was filed," the plaintiff acted in bad faith. *Lewis v. Trans Union LLC*, 2006 WL 2861059, *4 (N.D. Ill. Sept. 29, 2006).

---

[3] All available evidence suggests this pattern of alleging damages that are unsupported by the evidence is a pattern for Sulaiman Law Group. In *Jackson v. Experian Info. Sols., Inc.*, No. 15 C 11140, 2017 WL 635148, (N.D. Ill. Feb. 16, 2017), Judge Kennelly granted Experian's motion for summary judgment, in part because the plaintiff "failed to produce evidence from which a reasonable jury could find a causal relation between the violation of the statute and the loss of credit, or some other harm." *Id.* at *3. Judge Kennelly had already granted Experian's motion for sanctions under Rule 11 based on the same allegations of "constant credit denials" Plaintiff makes here, holding that that if the plaintiff and his lawyers had done their homework "they would have found out exactly what Mr. Jackson later made clear in his interrogatory answers and during his deposition; and they would have known that the allegation in paragraph 43 about credit denials was false." *See Jackson v. Experian Info. Sols., Inc.*, 15-cv-11140, Doc. 80 at 3 (N.D. Ill. Nov. 13, 2016). Likewise, Judge Leinenweber, recently granted Experian's motion for summary judgment, finding that "there was not a scintilla of evidence" that the Account History Block information at issue was ever disclosed to any third parties or that Plaintiff was ever damaged. *See Zorba v. Bayview Loan Servicing, LLC*, 15-cv-8663 (N.D. Ill. Feb. 9, 2017) (a transcript of Judge Lienenweber's oral ruling is attached as Exhibit F).

Sanctions are also available against attorneys in certain instances. In particular:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927; *see also Boyer v. BNSF Ry. Co.*, 824 F.3d 694, 708 (7th Cir.), opinion modified on reh'g, 832 F.3d 699 (7th Cir. 2016), and cert. denied, 137 S. Ct. 391, 196 L. Ed. 2d 296 (2016) ("If a lawyer pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound, the conduct is objectively unreasonable and vexatious. To put this a little differently, a lawyer engages in bad faith by acting recklessly or with indifference to the law, as well as by acting in the teeth of what he knows to be the law....") quoting *In re TCI Ltd.*, 769 F.2d 441, 446 (7th Cir.1985); *Mayle v. Equifax Information Systems, LLC*, , No. 03 CV 8746, 2006 WL 398076, at *2 (N.D. Ill. Feb. 14, 2006) (granting fee-shifting to defendants under § 1681n and fees against counsel under § 1927 in a case where the plaintiff and his counsel "acted unreasonably in filing this action because they knew (or should have reasonably known) that the claims against Defendants were frivolous").

### III. ARGUMENT

**A.     The Original Complaint was Frivolous and Without Foundation.**

In his Original Complaint, Plaintiff made various assertions that he knew were false at the time he made them. In particular, Plaintiff made various allegations regarding supposed credit damages that he suffered, including going so far as alleging that Experian prevented him from obtaining a mortgage and caused him to suffer *"constant credit denials,"* when in fact he had not suffered any denials attributable to Experian. Plaintiff similarly alleged that Experian caused him "anguish" and other emotional distress—allegations Plaintiff promptly disavowed at deposition and thus undoubtedly knew to be false when the Complaint was filed. These

allegations are especially egregious in light of the fact that Plaintiff provided counsel documentation in advance of filing that made plain that the reason Plaintiff was unable to secure a mortgage was that the lenders were concerned about ongoing foreclosure proceedings, something Experian cannot control. Those documents never mention Plaintiff's credit score at all and Plaintiff admitted that no one had ever specifically told him his credit score was an issue at all.

Plaintiff and his counsel knew that the allegations of damage in the Complaint were not supported by any evidence and were false. In particular, Plaintiff and his counsel knew when he filed the Complaint that mortgage brokers had informed him that they would not extend him a mortgage because of *ongoing foreclosure proceedings* and not because of any inaccuracy in his credit report. Plaintiff and his counsel proceeded in bad faith by pressing forward with litigation based on known falsehoods that, when stripped away rendered the case frivolous. Much like underlying bankruptcy, in filing the Original Complaint, truth and fair play were casualties along the way in Plaintiff's efforts to use the federal courts to his advantage. This cannot be countenanced. Awarding Experian its attorneys fees under 15 U.S.C. §§ 1681n(c) and 1681o(b) is thus appropriate against Plaintiff. *See Lewis v. Trans Union LLC*, 2006 WL 2861059, *4 (N.D. Ill. Sept. 29, 2006) (awarding fees against plaintiff under § 1681n where plaintiff "knew of the falsity and baselessness of allegations in the complaint when it was filed"). And fees under § 1927 are appropriate as to counsel. *See Mayle*, 2006 WL 398076 (awarding fees against both the plaintiff himself under § 1681n and against counsel under § 1927 where documents provided to counsel in advance of the filing of the complaint should have made clear that the claim was meritless).

**B.     The Amended Complaint was Known to be Frivolous.**

The Seventh Circuit has repeatedly stated that § 1927 "impose[s] a continuing duty upon attorneys to dismiss claims that are no longer viable." *See Jolly Grp., Ltd. v. Medline Indus., Inc.*, 435 F.3d 717, 720 (7th Cir. 2006) (quoting *Dahnke v. Teamsters Local 695*, 906 F.2d 1192, 1201 n. 6 (7th Cir.1990). It is ironic then, that the reason Plaintiff and his counsel proffered for wanting to file an Amended Complaint was to "conform to the evidence," when no such conforming took place. The FAC continued to press Plaintiff's false claims of causation, damage, and "constant credit denial," notwithstanding the fact that discovery had left no doubt that there were no denials that were caused by Experian's reporting. Plaintiff's counsel sat in the deposition and heard their client testify (consistent with the documents) that mortgage brokers told him that he would not qualify for a mortgage *because of ongoing foreclosures*, and *not* because of inaccuracies in his credit report or anything having to do with his credit score. Plaintiff and his counsel knew the allegations of credit denials caused by Experian to be false— yet they pressed forward making manifest misrepresentations to the Court.

Counsel and Plaintiff similarly knew that claims for emotional distress caused by Experian's reporting were not supported by any evidence. Indeed, Plaintiff directly testified— again, with counsel sitting next to him—that he was not making any claims for emotional distress. Nevertheless, and in the face of that testimony from their own client, the FAC persisted in the demonstrably false notion that Experian's reporting caused Plaintiff damage.

Finally, while Plaintiff and counsel may not have known at the time the Original Complaint was filed that the information in the Account History Block of Plaintiff's disclosure was not provided to third parties, both certainly knew that at the time of the filing of the FAC. Experian produced an Declaration to that effect, and Plaintiff's counsel questioned Experian's Rule 30(b)(6) designee on this topic at deposition. The testimony was unambiguous:   Account

History "information was displayed only to the consumer on the consumer disclosure," and "was not provided to third parties who requested Plaintiff's credit report for purposes of obtaining credit." (Ex. D at ¶¶ 10, 15-16; Ex. E at 86:9-21 ("Q: Now, is that information contained in the account history section provided to creditors? A: No, it's not.")) Nevertheless, the FAC repeatedly and falsely alleges that Experian provided inaccurate information in credit reports and that the inaccurate information made it more difficult for Plaintiff to secure credit. This was a known fallacy, yet it found its way into the FAC on multiple occasions.

Awarding fees to Experian under the FCRA is certainly appropriate with regard to the filing of the FAC, which courts in this district find to be appropriate where a plaintiff "filed an action or paper that was frivolous, unreasonable, or without foundation." *Ryan v. Trans Union Corp.*, 2001 WL 185182, *5 (N.D. Ill. Feb. 26, 2001). Here, the FAC's allegations of damage ***and*** of an inaccurate credit report were both utterly false and, as both are *prima facie* elements, necessary for Plaintiff's case to proceed. These false allegations rendered the FAC frivolous, unreasonable, and certainly without foundation. Attorneys' fees should be awarded for all time spent on the case *after* the filing of the FAC under the FCRA against Plaintiff.

For the same reason, attorneys' fees should be awarded as a sanction against Plaintiff's counsel, who should have been taking steps to dismiss the case after Plaintiff's deposition, but who instead chose to multiply the proceedings by filing a new complaint replete with known falsehoods. Counsel's actions unreasonably and vexatiously multiplied these proceedings, and fees should be awarded against counsel. *See Jolly Grp., Ltd.*, 435 F.3d at 720.

## C. Plaintiff's Motion for Summary Judgment was Frivolous.

Plaintiff's Motion for Summary Judgment was a dead letter. The Seventh Circuit has repeatedly and unambiguously made clear that in order to prevail under either §§ 1681e(b) or 1681i(a) , a plaintiff must demonstrate as part of his *prima facie* case *both* an inaccurate credit

13

report issued to a third party *and* actual damages caused by the inaccurate credit reporting. *See, e.g.*, *Wantz v. Experian Info. Sols.*, 386 F.3d 829, 834 (7th Cir. 2004), as amended (Nov. 16, 2004) *abrogated by Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 127 S. Ct. 2201, 167 L. Ed. 2d 1045 (2007) ("Without such a [consumer] report, there could be no duty to follow reasonable procedures regarding the report, nor could damages flow from a breach of that duty . . . In the absence of evidence that Experian disclosed incorrect information . . . to a third party, Wantz cannot even show that it violated the Act's reinvestigation requirement"); *Ruffin-Thompkins v. Experian Info. Sols., Inc.*, 422 F.3d 603, 608 (7th Cir. 2005) ("Before any discussion of the reasonableness of the reinvestigation is necessary, however, Ruffin–Thompkins must show that she 'suffered damages as a result of the inaccurate information.'") (quoting *Sarver v. Experian Info. Solutions*, 390 F.3d 969, 971 (7th Cir.2004)).

Plaintiff and his counsel understood that he could never meet either of those elements. Remarkably, Plaintiff plowed ahead and filed a Motion for Summary Judgment—asking this Court to find in his favor *as a matter of law*—without addressing either of these *prima facie* requirements. Even had this Court agreed with every single thing Plaintiff said in his Motion, Plaintiff still could not have possibly won, since he would still be two elements short of a victory. Instead, Plaintiff's Motion largely abandoned discussion of evidence or case law, relying instead principally on bombast and rhetoric. (*See* Doc. 106 at 1-2 (referring to Experian as a "nightmarish factory", acting "with the arrogance of a movie villain".) This is the definition of a frivolous paper—it could not have succeeded no matter Experian's response. *See Boyer*, 824 F.3d at 710 (issuing sanctions under § 1927 where " plaintiffs' counsel could not have reasonably believed" that his choice of forum would survive a motion to dismiss); *Melrose v. Shearson/American Exp., Inc.*, 898 F.2d 1209, 1216 (7th Cir. 1990) (holding that portions of a

14

summary judgment motion were frivolous where they were "based on arguments which were neither 'well-grounded in fact' nor warranted by existing law or a good faith argument for the extension, modification, or reversal or existing law'"); *Ryan*, 2001 WL 185182 at *6 (summary judgment motion that is unsupported by facts "was frivolous by half").

The FCRA and § 1927 provide fee-shifting as a sanction to deal with the sort frivolous papers that Plaintiff's Motion for Summary Judgment exemplifies. Indeed, given its flaws, there is no other reasonable explanation for Plaintiff's motion other than to harass and vexatiously multiplying the proceedings. Sanctions in the form of attorneys' fees incurred in responding to Plaintiff's Motion for Summary Judgment should also be granted.

## IV. CONCLUSION

For the reasons stated herein, this Court should find that Plaintiff's Complaint, Amended Complaint, and Motion for Summary Judgment were filed in bad faith in violation of 15 U.S.C. §§ 1681n(c) and 1681o(b). In addition, Plaintiff's counsel should be sanctioned in the form of an award of attorneys' fees for all time incurred since the filing of the FAC or, at the very least, time incurred responding to Plaintiff's Motion for Summary Judgment pursuant to 28 U.S.C. § 1927.

15

Dated:  March 2, 2017                    Respectfully submitted,

                                          */s/ Adam W. Wiers*___
                                          Adam W. Wiers
                                          Michael A. Zuckerman
                                          Christopher A. Hall
                                          JONES DAY
                                          77 West Wacker Drive
                                          Chicago, Illinois 60601.1692
                                          awwiers@jonesday.com
                                          mzuckerman@jonesday.com
                                          chall@jonesday.com

                                          *Attorneys for Defendant*
                                          *Experian Information Solutions, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that the foregoing was filed using the

CM/ECF system, which will send notice to all parties of record.

/s/ Christopher A. Hall
_____
*One of the Attorneys for Defendant*
*Experian Information Solutions,*
*Inc.*

.